**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **HERBERT STANLEY ROACH,**          )<br>                                     )<br>          Petitioner,               )<br>                                     )<br>     v.                              )<br>                                     )<br>**DEPARTMENT OF HOMELAND**           )<br>**SECURITY, DAVID KOLLUS,**          )<br>                                     )<br>          Respondents.               )<br>_____) | CIV 06-01733 PHX PGR (MEA)<br><br>REPORT AND RECOMMENDATION |

**TO THE HONORABLE PAUL G. ROSENBLATT:**

Mr. Herbert Roach ("Petitioner), who is currently detained at the INS Processing Center in Florence, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on July 12, 2006, seeking his release from detention. Petitioner filed a *pro se* amended petition for relief on September 28, 2006. See Docket No. 5. Respondents filed a Response in Opposition to Petition for Writ of Habeas Corpus (Docket No. 17) on December 15, 2006. Petitioner, through counsel, filed a reply to the response to the petition on March 6, 2007. See Docket No. 22.

**I. Background**

Petitioner, who was born in 1945, is a native and citizen of Guyana. See Response in Opposition to Petition for Writ of Habeas Corpus ("Response"), Exh. 1. On February 24,

1977, Petitioner was admitted to the United States as a lawful permanent resident. See id., Exh. 1. Petitioner is married to a United States citizen and has two United States citizen children. See id., Exh. 14.

In 1981, Petitioner was convicted by the United States District Court for the Southern District of Arizona for smuggling aliens into the United States, in violation of 8 U.S.C. § 1324. Id., Exh. 2. The United States initiated proceedings to exclude Petitioner from the United States. In 1990, a hearing was conducted before an Immigration Judge ("IJ") regarding the exclusion of Petitioner. Id., Exh. 3. The IJ concluded the government had not met its burden of establishing Petitioner was excludable because he had smuggled aliens into the United States for profit. Id., Exh. 3. Because the government could not produce the allegedly smuggled aliens who had signed affidavits asserting Petitioner had brought them into the United States, the IJ concluded the government had not produced evidence Petitioner had engaged in this activity for gain. Id., Exh. 3. The government appealed the IJ's decision to the Bureau of Immigration Appeals ("BIA"), which affirmed the IJ's decision. Id., Exh. 3.

In 1987 Petitioner was convicted by the State of Florida for possession of cocaine and resisting a police officer without violence, and he was sentenced to a term of two days incarceration for these offenses. Id., Exh. 4. In 1988, Petitioner was convicted by the State of Florida for possession of cocaine, possession of drug paraphernalia, and resisting an officer with violence. Id., Exh. 5. Petitioner was sentenced

to a term of six months of probation for these offenses. Id., Exh. 5. In 1990, Petitioner was convicted by the State of Florida for possession of cocaine, and was sentenced to a term of two days incarceration for this offense. Id., Exh. 6. In 1992, Petitioner was convicted by the State of Florida for petit larceny theft, and sentenced to a term of community service for this offense. Id., Exh. 7. And, in 1993, Petitioner was convicted by the State of Florida, again for possession of cocaine and possession of drug paraphernalia, and sentenced to a term of three days incarceration. Id., Exh. 8.

Respondent further asserts Petitioner was again convicted, *inter alia*, for possession of cocaine, by the State of Florida, on May 29, 2002, and August 9, 2002, October 18, 2002, April 22, 2004, and October 15, 2004. See id. at n.2. The maximum sentence imposed pursuant to any of these convictions was a term of 45 days incarceration. Id.

At some point prior to August 10, 2004, Petitioner apparently left the United States. Id., Exh. 9.[1] On August 10,

---

[1] A typed memo without any identifying mark is submitted by Respondents, which states:
> Subject arrived at MIAIAP on 8/10/2004 from Ecuador on XL316. Subject applied for admission into the U.S. as a returning U.S. resident alien. He presented his Guyanese passport [] along with his I-551, U.S. resident alien card. Subject was a match to a computer generated lookout for having been previously arrested on several felonies. Subject was referred to a secondary interview.
> Subject's fingerprints and photo were taken and his identity as a match to the arrest record [] was confirmed. A disposition to the arrest shows felony convictions for possession of cocaine. Subject stated that he was outside the U.S. from Aug. 4, 2004 until Aug. 10, 2004 while on vacation in Ecuador. Subject's inspection has

-3-

2004, Petitioner sought admission to the United States at the Miami airport, as a returning lawful permanent resident of the United States. Id., Exh. 9. At that time, the Department of Homeland Security determined Petitioner could be paroled into the United States pursuant to section 212(d)(5) of the Immigration and Nationality Act ("INA").[2]

On August 5, 2005, the Department of Homeland Security issued a Notice to Appear, charging Petitioner, an alien seeking admission into the United States, was inadmissable and was removable from the United States pursuant to section 212(a)(2)(A)(i)(II) of the INA, i.e., Petitioner was an immigrant seeking admission into the United States who had been convicted of violating the laws of a state relating to a controlled substance. Id., Exh. 10.[3] Petitioner was taken into

---

        been deferred to your office to determine admissibility. ...
Response, Exh. 9.

[2] This section is codified at 8 U.S.C. § 1882:
        The Attorney General may ... in his discretion parole into the United States temporarily ... any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

[3]
        Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of ...
        a violation of (or a conspiracy or attempt to violate) *any law or regulation of a State*, the United States, or a foreign country *relating to*

-4-

the custody of Immigration and Customs Enforcement ("ICE") on August 6, 2005. Id., Exh. 11.

A hearing was conducted on September 30, 2005, before an IJ, at which time Petitioner was ordered removed from the United States to Guyana. Id., Exh. 12.[4] At that time, Petitioner waived appeal of the order of removal to the BIA. Id., Exh. 12.[5] Pending his removal, Petitioner was ordered detained in Arizona. See Exh. 13.

Approximately three months later, on or about January 17, 2006, Petitioner filed motions in Florida to reopen his immigration proceedings and to transfer venue of his immigration proceedings to Arizona. Id., Exh. 16. On March 7, 2006, a Florida IJ denied the motion to reopen as not timely filed and also accordingly denied the motion to transfer venue. Id., Exh. 13. Petitioner appealed the IJ's decision denying his motion to reopen his removal proceedings to the BIA, which dismissed this appeal on May 15, 2006. Id., Exh. 16. In the interim, in April of 2006, Petitioner sought to stay his removal from the United States pending the outcome of the appeal before the BIA, by

---

*a controlled substance*... is inadmissible. 8 U.S.C. § 1182(a)(2)(A)(i) (2005 & Supp. 2006).

[4] The Immigration Judge's written order is not dated and the handwriting on the order is illegible. Response, Exh. 12. The written order indicates the Immigration Judge denied Petitioner's request for cancellation of removal. Id., Exh. 12.

[5] The Immigration Judge's order regarding Petitioner's bond redetermination states Petitioner appealed his order of removal to the BIA, which denied review on May 6, 2006, and to the Ninth Circuit Court of Appeals. See Response, Exh. 1 at 2. However, the BIA's written opinion filed May 15, 2006, indicates Petitioner did not appeal the order of removal, issued September 30, 2005, to the BIA. Id., Exh. 16.

-5-

filing a counseled motion to stay with the BIA. Id., Exh. 14.

Petitioner sought review of the BIA's decision regarding his motion to reopen by the United States Ninth Circuit Court of Appeals. Id., Exh. 17. The Ninth Circuit temporarily stayed Petitioner's order of removal on June 7, 2006. Id., Exh. 17. The Ninth Circuit ordered the case transferred to the Eleventh Circuit Court of Appeals in a mandate ultimately issued September 18, 2006. Id., Exh. 17. Petitioner's appeal of the BIA's decision is currently pending before the Eleventh Circuit Court of Appeals, which denied Petitioner's motion for a stay of his order of removal on January 12, 2007. Roach v. United States Att'y Gen., No. 06-16323-AA (available via PACER). Petitioner is now represented by counsel in his action before the Eleventh Circuit. Id. Counsel moved on February 6, 2007, to file his brief in the Eleventh Circuit Court of Appeals. Id.

Petitioner has been detained since August 6, 2005, pending the conclusion of his immigration proceedings and his removal. On July 5, 2006, Petitioner requested a bond determination hearing regarding his continued detention. See Response, Exh. 1. In a decision issued August 2, 2006, an IJ determined he did not have jurisdiction to order Petitioner's release on bond.[6] Id., Exh. 1. The IJ's decision was predicated

---

[6] The Code of Federal Regulations provides:
Except as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act. ...
8 C.F.R. § 235.3(d) (2006).

-6-

on the conclusion Petitioner was an "arriving alien," i.e., an inadmissable alien, who was subject to a final order of removal. Id., Exh. 1.  Petitioner appealed this decision to the BIA, which dismissed that appeal on September 5, 2006.  Id. at 5.

       The amended habeas petition asserts the order of removal is improper because Petitioner has not committed an "aggravated felony" as that term is defined by federal immigration statutes.  Petitioner states:

> The petitioner also not convicted of an aggravated felony (sic).[7]  The petitioner just have have a simple possession of cocaine residue and for the offense the petitioner has served the maximum of 45 days in jail with no prison time at all. (sic) ... The petitioner is arguing that the Board of Immigration Appeals and the Immigration Judge erred in concluding that he was an aggravated felon.... The petitioner is eligible for bond because he has no aggravated felony.

Docket No. 5.

       Respondents argue Petitioner's order of removal is premised on the conclusion he is an arriving alien who has been convicted of one or more crimes related to controlled

---

> The Code of Federal Regulations further provides:
> ...an immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens:
> (A) Aliens in exclusion proceedings;
> (B) Arriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act...

8 C.F.R. § 1003.19(h)(2)(I).

[7] The Court notes the basis for the order of removal is not Petitioner's conviction for an "aggravated felony," but instead Petitioner has been adjudicated as an arriving alien who has committed a state drug offense crime.

-7-

substances, citing 8 U.S.C. §§ 1231[8] and 1225.[9]  Respondents aver Petitioner's detention is proper and not in violation of federal law or Petitioner's constitutional rights.

**II.  Jurisdiction**

This Court has jurisdiction over the amended section 2241 petition only to consider the merits of Petitioner's claim his continued detention violates his constitutional rights. See Arreola-Arreola v. Ashcroft, 383 F.3d 956, 964-65 (9th Cir. 2004); Moallin v. Cangemi, 427 F. Supp. 2d 908, 920 (D. Minn. 2006).  The District Court does not have jurisdiction to consider whether the IJ properly concluded Petitioner's crimes constituted a legitimate basis for inadmissability and, accordingly, the propriety of the order of removal. See Real ID Act, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005); Padilla v. Gonzales, 470 F.3d 1209, 1213 (7th Cir. 2006); Rosales v. Bureau of Immigration & Customs Enforcement, 426 F.3d 733, 736 (5th Cir. 2005), cert. denied, 126 S. Ct. 1055 (2006).  The plain language of the REAL ID Act grants jurisdiction to

---

[8]
> During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(2) (2005 & Supp. 2006).

[9] This section deals with the detention of aliens seeking admission into the United States: "Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."  8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (2005 & Supp. 2006).

appellate courts to review questions of law presented in petitions for review of final orders of removal, even those pertaining to otherwise discretionary determinations. See Afridi v. Gonzales, 442 F.3d 1212, 1218 (9th Cir. 2006) (noting the REAL ID Act conferred jurisdiction on the United States Circuit Courts of Appeal to determine if an alien's crime was properly categorized as an "aggravated felony"); Cabrera-Alvarez v. Gonzales, 423 F.3d 1006, 1009 (9th Cir. 2005) (explaining that, in the context of appellate review of the BIA's discretionary decision to deny cancellation of removal, interpretation of immigration statutes is a question of law that appellate courts have jurisdiction to review pursuant to the REAL ID Act).

### III. Analysis

This Court may issue a writ of habeas corpus to a Department of Homeland Security detainee who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (1994 & Supp. 2006).

An alien who has achieved the status of a lawful permanent resident of the United States may lose this status if they leave the United States under particular circumstances and they must seek re-entry into the United States, which may be precluded based on the alien's commission of particular crimes. See, e.g., Tineo v. Ashcroft, 350 F.3d 382, 386-87 (3d Cir. 2003); Alaka v. Elwood, 225 F. Supp. 2d 547, 551 n.21 (E.D. Pa. 2002). Additionally, a person who is a lawful permanent resident of the United States, who leaves the United States and is found inadmissable upon their attempt to re-enter the

-9-

country, may be subject to proceedings to eject them from the United States. <u>Tineo</u>, 350 F.3d at 386-87; <u>Mejia v. Ashcroft</u>, 360 F. Supp. 2d 647, 649-50 (D.N.J. 2005).

An inadmissable alien must be detained during the pendency of their removal proceedings. The detention statute at issue provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a [removal] proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2) (2005 & Supp. 2006).

Petitioner's order of removal became final on September 30, 2005, when Petitioner waived his right to appeal the IJ's decision ordering him removed to the BIA.[10] The order was stayed from May 15, 2006, when the Ninth Circuit Court of Appeals temporarily stayed the order, until the Ninth Circuit terminated its proceedings by transferring jurisdiction to the Eleventh Circuit on September 18, 2006. As of the transfer of the case on September 18, 2006, there is no indication in the record

---

[10]
> An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final:
> (a) Upon dismissal of an appeal by the Board of Immigration Appeals;
> (b) Upon waiver of appeal by the respondent;
> (c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;
> ***

8 C.F.R. § 241.1 (2006). Petitioner's counsel acknowledges the order of removal became final on September 30, 2005. <u>See</u> Docket No. 33 at 3.

-10-

Petitioner's order of removal has been further stayed by the BIA or a federal court.[11]

Section 241 of the INA, codified at 8 U.S.C. § 1231, applies to the detention of aliens who are being held pursuant to an administratively final order of removal. This statute states: "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." § 1231(a)(1)(A) (2005 & Supp. 2006). Additionally, for particular categories of removable aliens, this section requires the Attorney General to detain the alien during the "removal period." See id. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible ..."). This section also explicitly allows, but does not require, the detention of an alien beyond the ninety-day removal period in certain circumstances. See id. § 1231(a)(6).[12]  However, the Ninth Circuit has determined that

---

[11] The ninety-day limit on an alien's detention without a bond hearing pending his removal is not applicable until the "removal period" begins. See, e.g., Kothandaraghipathy v. Department of Homeland Sec., 396 F. Supp. 2d 1104, 1107 (D. Ariz. 2005). However, if the alien appeals the order of removal and the reviewing court stays the removal order pending the resolution of the appeal, the "removal period" does not begin until the reviewing court issues its final order regarding the appeal. See 8 U.S.C. § 1231(a)(1)(B)(ii) (2005 & Supp. 2006); Kothandaraghipathy, 396 F. Supp. 2d at 1107.

[12] Section 1231(a)(6) provides:
An alien ordered removed who is inadmissible under section 1182 of this title ... or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the*

-11-

subsection 1231(a)(6) does not authorize the indefinite detention of an inadmissible alien. See Martinez-Vazquez v. INS, 346 F.3d 903, 906 (9th Cir. 2003), cert. denied, 543 U.S. 1045 (2005).

In Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491 (2001), the Supreme Court examined section 1231 to determine whether aliens may be detained *indefinitely* beyond the removal period, pending their deportation. The Supreme Court concluded that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." Id., 533 U.S. at 688-89, 121 S. Ct. at 2498. To avoid the constitutional difficulty, the Court decided to read an implicit time limitation into section 1231(a)(6), and determined that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." Id. The Court concluded that, if removal of an alien is not reasonably foreseeable, a court should hold that his continued detention is unreasonable and order his release. Id., 533 U.S. at 699-700, 121 S. Ct. at 2504. The Court determined that six months was the presumptive limit on the "reasonably necessary" period of time to detain an alien. See

---

*removal period* ....
Additionally, if an alien's release "pose[s] a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal from the United States," the alien may be detained. 8 C.F.R. §§ 241.4(d)(1) & 241.4(e)-(f) (2006).

-12-

id. 533 U.S. at 700, 121 S. Ct. at 2505.[13] The Ninth Circuit Court of Appeals has interpreted the "six month" limit to be a total of six months from the date the order of removal becomes final. See Khotesouvan v. Morones, 386 F.3d 1298, 1300 (9th Cir. 2004); Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001); accord Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

Petitioner's order of removal became final on September 30, 2005, when Petitioner waived appeal of the IJ's decision ordering him removed to the BIA. Accordingly, the six-month presumptively constitutionally-permissible period of detention expired March 29, 2006.[14] Petitioner has, therefore, been detained for approximately twelve months beyond the six-month constitutionally-permissible limit for detention of an alien

---

[13] Following the Zadvydas decision, the Government promulgated 8 C.F.R. §§ 241.14(f), et seq., in November 2001. See 66 Fed. Reg. 56967 (Nov. 21, 2001). The regulations provide in relevant part: Subject to the review procedures provided in this section, the Service shall continue to detain an alien if the release of the alien would pose a special danger to the public ... 8 C.F.R. § 241.14(f)(1)(ii).
Tuan Thai v. Ashcroft, 366 F.3d 790, 793 n.3 (9th Cir. 2004).

[14] The post-removal period was arguably "tolled," or interrupted, during the four months the Ninth Circuit Court of Appeals' stay of the order of removal was in effect from May through September of 2006. Cf. Gopaul v. McElroy, 115 Fed. App. 530, 531 (3d Cir. 2004) (stating the removal period is tolled during the period a federal court stays an order of removal); Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002) (concluding the removal period is tolled if the alien "frustrates" efforts to remove him, i.e., by not cooperating in obtaining travel documents); Powell v. Ashcroft, 194 F. Supp. 2d 209, 210 (E.D.N.Y. 2002). Even if the Court tolled the removal period during this four month period, however, the period of detention after the removal order became final still exceeds the allowable six months.

pursuant to section 1231.

> [In <u>Zadvydas</u> the Supreme Court] held that, unless special circumstances exist, an alien ordered removed whose removal is not reasonably foreseeable may not be detained indefinitely, but only for "a period reasonably necessary to secure removal." <u>Id.</u> at 699, 121 S. Ct. 2491; <u>see also id.</u> at 690-92, 121 S. Ct. 2491. Detention for 6 months, including the 90-day removal period, is "presumptively reasonable." <u>Id.</u> at 701, 121 S. Ct. 2491. A due process analysis and remedy follow: If, after 6 months, the alien makes a showing that there is "no significant likelihood of removal in the reasonably foreseeable future," then the government must establish such a likelihood, or the existence of special circumstances, or the alien must be released from custody. <u>Id.</u> at 696, 701, 121 S. Ct. 2491.

<u>Khotesouvan</u>, 386 F.3d at 1300.

The burden of showing that there is no significant likelihood that a habeas petitioner will be removed in the reasonably foreseeable future rests with the petitioner seeking relief. <u>See</u> <u>Pelich v. INS</u>, 329 F.3d 1057, 1059 (9th Cir. 2003). If the petitioner meets his burden, the government must then introduce evidence to refute that assertion. <u>See id.</u>; <u>Lin Guo Xi v. INS</u>, 298 F.3d 832, 839-40 (9th Cir. 2002). A petitioner may make such a showing by establishing that there is an "institutional barrier" to his repatriation, i.e., that the country of removal does not have an agreement with the United States to accept repatriation of its nationals. <u>See</u> <u>Kim Ho Ma</u>, 257 F.3d at 1115 (concluding that, because the United States had no functioning repatriation agreement with Cambodia, the designated country of removal, and because the Cambodian government did not accept the return of its nationals from the United States, there was no reasonable likelihood that the INS

-14-

would be able to accomplish the petitioner's removal in the reasonably foreseeable future); Fahim v. Ashcroft, 227 F. Supp. 2d 1359, 1365 (N.D. Ga. 2002). Petitioner must demonstrate that "the circumstances of his status" or the existence of "particular barriers to his repatriation" to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future. Fahim, 227 F. Supp. 2d at 1366.

Petitioner has not produced evidence of an "institutional barrier" prohibiting his return to Guyana. Compare Ekeh v. Gonzales, 197 Fed. App. 637, 638 (9th Cir. 2006) (concluding that an alien, who had been detained for 30 months and who had applied for travel documents from "Liberia, Nigeria, Ethiopia, South Africa, France, Cote D'Ivoire, Italy, Sweden, the Netherlands, and Switzerland" and who had "submitted to interviews with Liberian and Nigerian officials and has repeatedly pledged to 'sign any document presented to him' to gain his removal" had met his burden of establishing there was no reasonable likelihood of his removal in the foreseeable future); Yassir v. Ashcroft, 111 Fed. App. 75, 77 (3d Cir. 2004); Abdel-Muhti v. Ashcroft, 314 F. Supp. 2d 418, 429 (M.D. Pa. 2004); Rajigah v. Conway, 268 F. Supp. 2d 159, 166 (E.D.N.Y. 2003).[15] But see Singh v. Gonzales, 448 F. Supp. 2d 1214, 1220

---

[15] [P]etitioner has satisfied his burden of "provid[ing] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas at 701, 121 S. Ct. 2491. Indeed, he has submitted a letter from the Guyanese Ambassador, stating that the embassy will not issue travel documents to

-15-

(W.D. Wash. 2006).[16]  However, Respondents do not aver, nor present any evidence, that Petitioner has frustrated attempts to remove him from the county or that Petitioner has not cooperated in acquiring travel documents from Guyana.  Neither do Respondents indicate why Petitioner's removal from the United States has been delayed.

### IV. Conclusion

Should Petitioner be able to proffer evidence of an institutional barrier to his removal, or evidence that in his particular circumstance removal is not reasonably likely in the foreseeable future, Petitioner would be entitled to habeas relief pursuant to the conclusion in Zadvydas.  Because Respondents do not aver Petitioner has frustrated efforts to remove him or that there is some institutional or judicial impediment to his removal, the Court concludes that, were the burden to shift to Respondents to supply evidence that removal was likely, Respondents could not meet this burden. Accordingly, the issue may not be resolved based on the information before the Court at this time and the petition for habeas relief should be dismissed but without prejudice.

---

him both because of his pending judicial proceedings and because of his inability to receive adequate medical treatment for his eye disease in Guyana.

[16] Petitioner avers he is eligible for cancellation of removal.  See Reply at 9-10.  However, the nature of the grounds of inadmissibility indicate, arguably, that Petitioner may not be eligible for this relief.  See Cruz-Bucheli v. Gonzales, 463 F.3d 105, 107 (1st Cir. 2006).

**IT IS THEREFORE RECOMMENDED** that Mr. Roach's Petition for Writ of Habeas Corpus be **denied without prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir.) (en banc), cert. denied, 540 U.S. 900 (2003). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 19th day of March, 2007.

_____
Mark E. Aspey
United States Magistrate Judge